[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS (#107)
On or about April 28, 2000, Jacob, a Westport resident, filed a Verified Petition to determine paternity in this court. Burton is the defendant mother of a now four year old son born out of wedlock.
Burton had earlier filed a paternity petition against Jacob in Family Court in New York. Jacob moved to dismiss on the ground of forum non conveniens and the Hearing Examiner dismissed the petition upon agreement by Jacob to certain stipulations regarding support orders later to be entered in Connecticut.
On January 11, 2001, Burton brought a second paternity action — this one in the Superior Court for the Judicial District of Stamford/Norwalk at Stamford. She has now moved to dismiss this action claiming this court lacks subject matter jurisdiction under Conn. Gen, Stat. § 46b-172(a) which specifically provides:
 "any person claiming to be the father of a child born out of wedlock may at any time but no later than sixty CT Page 3132-ez days after the date of notice under 45a-716 file a claim for paternity with the court of probate for the district in which either the mother or child resides."
Thus, Burton argues Jacob could only have brought this action in the probate court for the district of Norwalk since both mother and son reside in Norwalk. The State of Connecticut has intervened as of right under C.S.G. § 46b-160(a) since the family received public assistance from the child's date of birth until May 31, 1998. The State supports Burton's motion to dismiss.
Jacob has objected and states the motion is both untimely and "lacks legal foundation." All of the parties have submitted written papers and oral argument was heard on January 25, 2001.
Though Jacob cites Practice Book Sec. 25-12 as the lynchpin for his argument of untimeliness, it is of no assistance to him since § 25-12 states only that a motion to dismiss must be filed within thirty (30) days of the filing of an appearance if the motion is based on a claimed lack of personal jurisdiction, improper venue, insufficiency of process, or insufficiency of service of process. The basis of the instant motion to dismiss is lack of subject matter jurisdiction, which claim is not embraced by P.B. § 25-12. Subject matter jurisdiction may be raised at any time; it cannot be waived since it goes to the competency of a court to hear a matter. See Practice Book Sec. § 10-33; Park CityHospital v. Comm. On Hospitals Health Care, 210 Conn. 697, 702 n. 7 (1989).
Jacob next asserts Burton's claim this court lacks subject matter jurisdiction has no "legal foundation.". He posits that, since Conn. Gen. Stat. § 46b-160 et. seq. empowers the court to hear and determine paternity cases, there is subject matter jurisdiction. C.G.S. § 46b-160 expressly provides that, when the mother is plaintiff in a paternity action, the action is commenced by the filing of a verified petition, summons and order in the superior court for the judicial district in which either the mother or putative father resides. C.G.S. § 46b-162 vests the State of Connecticut or a town therein with the same filing rights as the mother has. Subject matter jurisdiction is the power of the court to learn and determine cases of the general class to which the proceedings in question belong. LeConche v. Elligers,215 Conn. 701, 709 (1990) citing Shea v. First Federal Savings LoanAssociation of New Haven, 184 Conn. 285, 288 (1981). The statutory scheme regarding paternity actions is plaintiff specific. That is, our CT Page 3132-fa legislature chose not to provide all paternity actions be commenced in a similar fashion but instead provides for jurisdiction in the superior court when mothers initiate suit and in probate court when putative fathers initiate suit. Under that scheme, the "general class" of cases is not all paternity actions but rather plaintiff specific paternity actions. There is not, therefore, under C.G.S. § 46b-172a(a) subject matter jurisdiction in this court to hear and determine that class of paternity petitions instituted by putative fathers.
Jacob next argues the legislature's differing treatment of mothers and putative fathers vis-a-vis paternity actions is violative of both the equal protection and due process clauses of both this state's and our federal constitution. He does not, however, state any authority for that proposition. It is relevant to his equal protection argument that the present statutory scheme serves a rational basis. Historically, the probate court's charter has been to hear and determine the legitimacy of one person's interest in the life and affairs of another. A woman's interest in the affairs of her child are already legitimized by virtue of the birthing process; her status as a parent vests at the child's birth. That interest is significantly different in the case of a putative father whose rights have not yet been adjudicated or who has not acknowledged paternity; that person is not cloaked with the status of a parent and thus it serves a rational basis that the putative father seek determination of his status in probate court. Consistent with this statutory scheme, once the male's paternity has been established and his parental status acknowledged, all disputes concerning custody, visitation and support are, under C.G.S. § 46b-172a (g), transferred to the superior court. Jacob's due process argument is also not persuasive. Not only does the male have all of the same procedural safeguards as the female once he has either acknowledged paternity or his parental rights have been adjudicated in his favor but, under C.G.S. § 46b-172(a)(1), the putative father, prior to signing an affirmation of paternity, must be "provided oral and written notice of the alternatives to, the legal consequences of, and the rights and responsibilities that arise" from such acknowledgment. By that statute's express terms, he must be advised of his "right to contest paternity, including the right to appointment of counsel, a genetic test to determine paternity and a trial by the Superior Court or a family support magistrate and that acknowledgment of paternity will make such father liable for the financial support of the child until the child's eighteenth birthday." The putative father's due process rights are thus appropriately safeguarded.
Finally, Jacobs argues the use of the word "may" in C.G.S. §46b-172a(a)[1] ("may file a claim . . . with the court of probate CT Page 3132-fb . . .") is permissive language and does not therefore provide the exclusive remedy for the putative father's establishing of paternity. Our Supreme Court, in Weiderbacher v. Duclos, 234 Conn. 51 (1995). determined this statute did not "require him to undertake this procedure at the exclusion of all other procedures . . ." Id. At 65. It reasoned the legislature's failure to construct an exclusive legislative scheme was a deliberate choice not to create an "exclusive statutory means of proving paternity."Id. The Court also concluded the statutory language expressly contemplated that a putative father may use different procedural vehicles to establish paternity and pointed specifically to the language in subsection (h) which reads, "[F]ailing perfection of parental rights as prescribed by this section . . ." as evidence the legislature recognized a putative father could seek to prove paternity without resort to the statutory means. Id. At 65-66. It continued, "Indeed the first non-statutory method enumerated by this subsection is an adjudication of paternity by a court of competent jurisdiction." Id at 66. "Furthermore, the final clause of the section — `unless he has shown a reasonable degree of interest, concern or responsibility for the child's welfare' — indicates that the failure of a person to prove paternity under the terms of the statute is not conclusive of that person's paternal rights." Id. In the case at bar, however, Jacob clearly intended to invoke the statutory method of proving paternity. Paragraph 6 of his verified petition specifically rests the court's jurisdiction not on its common law or equitable powers but upon statutory authority specifically "Connecticut General Statutes § 46b-40 through § 46b-87a; §§46b-160 et. seq.; and §§ 46b-172 et. seq." C.G.S. §§ 46b-40 through46b-87a are inapplicable to this matter pertaining as they do to dissolution of marriage, legal separation and annulment. Nor are C.G.S. §§ 46b-160 et. seq. pertinent since they address paternity actions instituted by the mother (§§ 46b-160 and 46b-169), paternity actions instituted either by the state or a town (§ 46b-162), the taking of evidence in such matters, and the withdrawal or settlement of a paternity action as well as the judgment and order of a court or family support magistrate. Only C.G.S. §§ 46b-172 et seq. of the statutes enumerated in Jacob's petition are applicable to paternity actions instituted by males. Having chosen to bring his paternity petition under § 46b-172a, he is bound by its terms.
Original jurisdiction is with the court of probate for the district of Norwalk. The motion to dismiss is granted.
SHEEDY, J.